UNITED STATES DISTRICT
COURT  MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION


CHLOE CARNEGIE,

Plaintiff,

v.                                            Case No.  8:25-cv-00739-CEH-AEP

HERITAGE PARK NURSING CENTER
LLC,

Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court *sua sponte* after further review of Plaintiff Chloe Carnegie's Amended Motion for Partial Final Judgment against Defendant Heritage Park Nursing Center, LLC (Doc. 16). Plaintiff's Motion requests default judgment on all five counts of Plaintiff's Complaint but only seeks economic damages and reasonable attorney's fees (Doc. 16, at 4). The Motion makes it unclear whether Plaintiff intends to pursue noneconomic damages following the entry of a default judgment. While the undersigned, for the reasons stated below, recommends a finding of liability as to all five counts, the undersigned does not recommend entering a partial final judgment. The undersigned misconstrued the relief requested in Plaintiff's Motion and now updates the recommendation to the Court accordingly.

Plaintiff first filed a Motion for Clerk's Entry of Default under Federal Rule

1

of Civil Procedure 55(a) after the Defendant failed to answer her Complaint (Doc. 11), which the Court granted on May 14, 2025 (Doc. 13). On June 18, 2025, Plaintiff moved for default judgment (Doc. 14), which the Court denied without prejudice due to the lack of a supporting memorandum of law (Doc. 15). Subsequently, on July 10, 2025, Plaintiff filed an amended motion seeking entry of partial final default judgment and damages, including back pay, front pay, attorneys' fees, and costs (Doc. 16), which the Court now considers.

## I.    Background

On March 26, 2025, Plaintiff Chloe Carnegie filed a complaint asserting five claims against Defendant Heritage Park Nursing Center, LLC, including pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Right Act ("FCRA"), as well as a violation of the Pregnant Workers Fairness Act ("PWFA") (Doc. 1). Plaintiff alleges she began working as a Certified Nursing Assistant on or about March 15, 2023, and informed the Defendant of her pregnancy on or about November 13, 2023 (Doc. 1, ¶¶ 12–13). After Plaintiff was hospitalized for pregnancy complications, her doctor recommended light-duty work, which she communicated to her Staffing Coordinator, who requested a doctor's note (Doc. 1, ¶¶ 14–16). Once she provided the note requesting accommodations, she was told that there was no light duty available and was advised to return after childbirth or submit a note indicating she could work normally (Doc. 1, ¶¶ 17–18). At that time, Plaintiff knew of at least one non-pregnant employee receiving light-duty work after surgery (Doc. 1, ¶ 19). Based on these facts, Plaintiff seeks entry of partial final default

2

judgment and damages, including back pay, front pay, attorneys' fees, and costs for all five counts.

## II.    Legal Standard

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)). Before entering a default judgment, the court must ensure that it has jurisdiction over the claims and parties and that the well-pled factual allegations in the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").[1] Because the defendant is deemed to admit the plaintiff's well-pleaded allegations of fact following entry of a default under Rule 55(a), the court must ensure that the well-pleaded allegations in the complaint actually state a substantive cause of action and that a substantive, sufficient basis exists in the pleadings for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted).[2] If the allegations in the complaint, accepted as true, establish the defaulted defendant's liability, then the court should enter judgment against them. *See generally Chanel, Inc. v. besumart.com*, 240

---

[1] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. r. 36-2.

F. Supp. 3d 1283, 1288–89 (S.D. Fla. 2016). Courts assess pleadings in conjunction with a default judgment by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citation omitted). That is, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). At all times, the decision to enter a default judgment remains within the court's discretion. *Hamm v. Dekalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985).

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is also entitled to the relief requested. Notably, allegations regarding the amount of damages are not admitted by virtue of default. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) (citation omitted). Rather, the plaintiff bears the burden to demonstrate the amount of damages it contends the court should award, and the court determines the amount and character of damages to be awarded. *Id.* Though the court may hold an evidentiary hearing to determine an appropriate amount of damages, it is not required to do so, especially where the essential evidence is of record. *See Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that, when considering when to enter or effectuate a default judgment, the court maintains discretion regarding whether to

4

conduct an evidentiary hearing to determine the amount of damages); *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone"); *Wallace*, 247 F.R.D. at 681 ("If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. . . . However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages."); *see also* Fed. R. Civ. P. 55(b)(2). Notwithstanding, a court must ensure that a legitimate basis exists for any damage award it enters. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

## III.   Discussion

### A. Subject Matter Jurisdiction and Personal Jurisdiction

As a preliminary matter, the Court retains subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts two federal claims under Title VII of the Civil Rights Act and one claim under the Pregnant Workers Fairness Act (Doc. 1, at 4–6). Further, the Court has supplemental jurisdiction over Plaintiff's two Florida Civil Rights Act claims because the pregnancy discrimination and retaliation alleged form "part of the same case or controversy" as the federal claims since they arise from the same incident. 28 U.S.C. § 1367(a).

The Court must also ensure it has personal jurisdiction over the defaulting defendant. *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, at *6 (M.D. Fla. June 8, 2018), *report and recommendation adopted*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3428157 (M.D. Fla. July 16, 2018). For a

federal court to have personal jurisdiction over a nonresident defendant, the forum state's long-arm statute must reach the defendant, and the defendant must have sufficient contacts with the forum state such that exercising jurisdiction would not offend due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Florida's long-arm statute reaches a nonresident entity when it operates, conducts, engages in, or carries on a business within the state. Fla. Stat. § 48.193(1)(a)(1).

Here, Plaintiff's Complaint pleads factual allegations showing Defendant is licensed and authorized to conduct business in Florida and does so through the hiring of employees for its nursing center (Doc. 1, ¶¶ 8, 9, 12, 19). The actions of the Staffing Coordinator, an employee of Defendant, occurred in the Middle District of Florida (Doc. 1, ¶¶ 12, 13, 18). Thus, the exercise of personal jurisdiction is appropriate in this matter.

## B. Proper Service of Process

In seeking a default judgment, Plaintiff bears the burden of establishing proper service of the complaint. *See Rajotte v. Fabco Metal Prod., LLC*, No. 6:12-cv-372-ORL-28, 2012 WL 6765731, at *2 (M.D. Fla. Dec. 13, 2012), *report and recommendation adopted,* No. 6:12-cv-372-ORL-28, 2013 WL 57722 (M.D. Fla. Jan. 4, 2013) (denying motion for default judgment without prejudice due to improper service). Even if a defaulting defendant has actual notice of the action, "[i]nsufficient or improper service cannot support the entry of a default judgment." *Opella v. Rullan*, No. 10-civ-21134, 2011 WL 2600707, at *4 (S.D. Fla. June 29, 2011), *report and recommendation adopted*,

6

No. 10-civ-21134, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011) (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)); *see also Murphy Bros. v Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of such service (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). Service on a corporation, partnership, or association may be completed "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(B). Service on an individual may be completed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed R. Civ. P. 4(e)(1). Since the Court is in Florida, Florida rules for service of process apply. In Florida, service on an LLC is governed by section 48.062, Florida Statutes. An LLC may be served by service on its registered agent. Fla. Stat. § 48.062(2). On April 3, 2025, James Kady, on behalf of Plaintiff, served Constance Lawson, a Client Service Specialist and employee of the Registered Agent at 115 N. Calhoun Street, Suite 4, Tallahassee, FL 32301, on behalf of Defendant (Doc. 10). Thus, service of process on Defendant was proper.

## C. Liability

As a result of Defendant's default in this action, Plaintiff's well-pled allegations in the Complaint are deemed to be admitted. Accordingly, Plaintiff now moves for entry of default judgment on Counts I-V, each to be addressed in turn.

### i.  Count I: Title VII – Pregnancy Discrimination

Under Title VII of the Civil Rights Act of 1964, an employer is prohibited from "discriminat[ing] against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." *Young v. UPS*, 575 U.S. 206, 212 (2015) (quoting 42 U.S.C. §2000e-2(a)(1)). In 1978, Congress's enactment of the Pregnancy Discrimination Act ("PDA") amended Title VII to include pregnancy, childbirth, or related medical conditions in its definition of "sex." *Id.* A plaintiff alleging pregnancy discrimination under Title VII must prove: (1) she is a member of a protected group under Title VII; (2) she is qualified for the position; (3) she suffered an adverse effect on her employment; and (4) she suffered from differential application of work or disciplinary rules. *Armstrong v. Flowers Hosp.*, 33 F.3d 1308, 1314 (11th Cir. 1994). When an employer refuses a reasonable accommodation for a pregnancy-related process that compels the woman to resign, courts consider this a constructive discharge, which is an adverse action. *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1260–61 (11th Cir. 2017) (citing *Green v. Brennan*, 578 U.S. 547, 555 (2016) ("Title VII treats th[e] resignation as tantamount to an actual discharge.")).

Here, Plaintiff informed Defendant of her pregnancy around November 13, 2023 (Doc. 1, ¶ 13). She was still pregnant during the alleged discrimination in April 2024 and is protected under Title VII (Doc. 1, ¶¶ 13–14, 17–18). Plaintiff was qualified as a CNA, having been employed in that role for over a year (Doc. 1, ¶¶ 12, 17). When she provided a doctor's note, the Staffing Coordinator rejected her reasonable accommodations, which included frequent bathroom breaks, no

8

overtime, no prolonged standing, and no heavy lifting (Doc. 1, ¶¶ 17–18). She was given the choice to leave or obtain a note permitting her to work as usual (Doc. 1, ¶ 18). This rejection, which allegedly led to her resignation, constitutes constructive discharge. Additionally, the Staffing Coordinator rejected her accommodations but approved light duty for a non-pregnant employee who underwent surgery (Doc. 1, ¶ 19). Therefore, Plaintiff states a claim for relief on Count I of the Complaint.

### ii.    Count II: Title VII – Retaliation

Title VII also extends protections to an employee from retaliation when he or she "oppose[s] any practice made an unlawful employment practice by this subchapter . . . ." *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (quoting 42 U.S.C. § 2000e-3(a)). To state a retaliation claim under Title VII, "the plaintiff must show (1) that she engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities." *Id.* The requisite causal link must only show that the protected activity and the adverse action are not completely unrelated. *Id.* Furthermore, federal law allows a woman to seek reasonable accommodations for her employment during pregnancy, provided that no undue hardship would be imposed on the business. 42 U.S.C. § 2000gg-1(1). Undue hardship relating to Title VII actions is shown when "a burden is substantial in the overall context of an employer's business." *Groff v. Dejoy*, 600 U.S. 447, 468 (2023). In the context of employee rights, no undue

hardship is imposed by "temporary costs, voluntary shift swapping, occasional shift swapping, or administrative costs." *Id.* at 471.

Here, Plaintiff was issued a note for Defendant containing reasonable accommodations after undergoing medical treatment for pregnancy complications (Doc. 1, ¶¶ 16–17). Her request for reasonable accommodations as a CNA is legally protected because, in the context of the nursing center, granting her request does not impose a substantial burden on it. Even if other CNAs were required to switch shifts with Plaintiff to cover heavy lifting duties, this hardship would not rise to the level of "undue." As explained above, resignation due to constructive discharge is virtually equivalent to an actual discharge under Title VII when working conditions become intolerable to the point a "reasonable person would . . . [feel] compelled to resign." *Hicks,* 870 F.3d at 1258 (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). When Plaintiff provided the Staffing Coordinator with her doctor's note, she was effectively forced to choose between leaving her job or ignoring her medical advice following pregnancy complications (Doc. 1, ¶ 18). No alternatives or inquiries were provided, leaving a reasonable person in her position feeling compelled to resign. Her request for accommodations and her subsequent constructive discharge are causally linked because the Staffing Coordinator did not object when she initially verbally expressed her need for "light duty" (Doc. 1, ¶ 16). It was only after she returned with the note requesting accommodations that the Staffing Coordinator effectively forced her on leave (Doc. 16, at 6). Therefore, Plaintiff states a claim for relief on Count II of the Complaint.

### iii. Count III: Pregnant Workers Fairness Act – Failure to Accommodate

As stated above, the PWFA prohibits employers from refusing to make reasonable accommodations to the known limitations related to the pregnancy of a qualified employee, unless the employer can demonstrate "that the accommodation would impose an undue hardship" on the business. 42 U.S.C. § 2000gg-1(1). Further, it prohibits an employer from taking an "adverse action . . . against a qualified employee" due to the employee's request for reasonable accommodations. § 2000gg-1(5). Under the PWFA, the plaintiff must state: (1) she had a medical condition related to the pregnancy; (2) she was placed on work restrictions by a medical professional; (3) she is requesting reasonable accommodations; and (4) the defendant failed to accommodate those restrictions. *See Everson v. Blue Cross*, No. 3:24-CV-762-WWB-LLL, 2025 U.S. Dist. LEXIS 103173, at *10–11 (M.D. Fla. May 30, 2025).

Plaintiff's Complaint states she experienced pregnancy complications during her visit to the hospital on April 18, 2024 (Doc. 1, ¶ 14). Due to these complications, medical professionals recommended she be restricted to "light duty work" upon her return (Doc. 1, ¶ 15). She requested accommodations such as frequent bathroom breaks, no overtime, no prolonged standing, and no heavy lifting, as indicated in her doctor's note (Doc. 1, ¶ 17). However, the Staffing Coordinator rejected these requests, offering only the options to leave temporarily or work without restrictions, ignoring her doctor's recommendations (Doc. 1, ¶¶ 16–18). Under the PWFA, employers cannot require employees to take leave or

11

accept accommodations without engaging in an interactive process to find suitable solutions. 42 U.S.C. §§ 2000-gg(2), (4). The Staffing Coordinator's failure to do so effectively constructively discharged her, constituting an adverse action. The alleged lack of light-duty options does not justify the rejection, as her requested accommodations do not require special provisions (Doc. 16, at 8). Moreover, given that Plaintiff is seeking default judgment, Defendant has not provided any evidence that the accommodations would impose a significant burden on the business, resulting in undue hardship. Therefore, the Staffing Coordinator failed to accommodate her under the PWFA. Thus, Plaintiff properly states a claim on Count III of the Complaint.

### iv.    Counts IV and V: Florida Civil Rights Act – Pregnancy Discrimination and Retaliation

Lastly, Plaintiff asserts parallel claims for pregnancy discrimination and retaliation under FCRA (Doc. 1, ¶¶ 7–8). Similar to Title VII, FCRA prohibits discrimination against individuals belonging to a protected class. Fla. Stat. § 760.01. Florida courts have noted that FCRA was patterned after Title VII and, therefore, is guided by the analysis under the federal standard for pregnancy discrimination and retaliation claims. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) (explaining retaliation claims under FCRA and Title VII are construed in the same manner); *DuChateau v. Camp, Dresser & McKee, Inc.*, 713 F.3d 1298, 1302 (11th Cir. 2013) (noting a pregnancy discrimination claim under FCRA "would be construed in the same manner as a cause of action

for pregnancy discrimination under Title VII").

Because Plaintiff's well-pled Complaint sufficiently states a claim of pregnancy discrimination and retaliation under Title VII, Defendant is liable on Counts IV and V for discriminating against Plaintiff based on her pregnancy and for retaliating by constructively terminating her after she sought reasonable accommodations under the FCRA.

### D. Damages

Regarding damages, Plaintiff argues she is entitled to $19,160.00 of monetary relief in lost wages for back pay and front pay under Federal Rule of Civil Procedure 55(b) (Doc. 16-2). Plaintiff provided a declaration stating that she was unemployed from April 19, 2024, to September 8, 2024, and is entitled to lost income for a total of 20 weeks at a rate of $19.00 per hour, averaging 32 to 40 hours per week, totaling $15,200 (Doc. 16-2, ¶ 8). From September 9, 2024, to the time she filed the Complaint, she earned $17.50 per hour, which is $1.50 less than she earned while employed with Defendant, resulting in a loss totaling $2,400 (Doc. 16-2, ¶ 9). In addition, she requests an additional 26 weeks' worth of front pay from the date of the Complaint, totaling $1,560 (Doc. 16-2 ¶ 9). The undersigned finds that the lost income of $15,200 and income differential of $2,400 can be calculated with reasonable certainty, but Plaintiff's request for front pay requires further analysis.

Prevailing plaintiffs under Title VII are presumptively entitled to reinstatement to restore them to their pre-discriminatory economic state. *See Nord*

13

*v. U.S. Steel Corp.*, 758 F.2d 1462, 1473 (11th Cir. 1985). However, when reinstatement is not viable due to continuing hostility or an unsuitable work environment for the plaintiff, front pay may be ordered as a substitute for reinstatement. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). Courts, "in the exercise of their duty to render an equitable award of damages for front pay, must also consider what is fair and reasonable under the circumstances." *Armstrong v. Charlotte Cnty. Bd. of Cnty. Comm'rs*, 273 F. Supp. 2d 1312, 1317 (M.D. Fla. 2023).

Here, Plaintiff seeks 26 weeks of front pay in the amount of $1,560 ($1.50 per hour for 40 hours a week multiplied by 26 weeks) to restore her to her economic state before Defendant constructively discharged her (Docs. 16, at 10; 16-2, ¶ 9). Although Plaintiff has not provided evidence of a hostile work environment, her work environment may be considered unsuitable for reinstatement given the fact that Defendant failed to accommodate her requested accommodations due to her pregnancy complications (Doc. 16, at 8). Under these circumstances, allowing Plaintiff to receive front pay will restore her to her complete economic state before Defendant's discrimination, which fulfills the court's duty to the prevailing plaintiff. *See Nord*, 758 F.2d at 1470 (explaining district courts have the duty to place a party that was discriminated against "in the position he or she would have been absent the discriminatory actions"). Thus, Plaintiff is entitled to her request for front pay in the amount of $1,560.

### E. Attorneys' Fees and Costs

Lastly, Plaintiff seeks attorneys' fees and costs in this case. When a plaintiff wins in a Title VII action, a court may award reasonable attorneys' fees and costs to the winning party. 42 U.S.C. §2000e-5(k). This also applies to the PWFA because the act adopts Title VII's discretionary scheme for attorneys' fees and costs. *See* 42 U.S.C. § 2000gg-2. Courts have historically used the lodestar approach to determine reasonable attorneys' fees, which is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 888 (1984)). In determining the reasonable hourly rate in this approach, courts consider "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895–96 n.11). In this context, an attorney's "market rate" is based on the location where the case is filed. *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The fee applicant bears the burden of proving the requested rate is the true market rate in a given area. *Norman*, 836 F.2d at 1299. Satisfactory evidence must consist of "more than the affidavit of the attorney performing the work. *Id.* However, direct evidence of charges by lawyers under similar circumstances or by opinion evidence may suffice. *Id.*

Plaintiff's counsel states that his firm billed 13.5 hours for all work necessary to litigate this matter through default judgment, including intake, a factual investigation, document drafting, securing the Clerk's default, and motion preparation (Doc. 16, at 11). Upon consideration, counsel's expended time for this matter is reasonable.

Further, Plaintiff suggests that $600 per hour is a reasonable hourly rate in this case because of Plaintiff's counsel's credentials, 30 years of experience in Florida, and Board Certification in Labor and Employment Law (Doc. 16, at 11). While Plaintiff's counsel asserts one case to support a finding of a civil rights attorney with 32 years of experience in the Southern District of Florida, counsel has merely stated the amount charged per hour and has not provided any rates charged under similar circumstances in the Middle District of Florida (Doc. 16, at 2, 11). Without additional evidence that goes beyond what counsel states was charged, the court may exercise its discretion to determine the appropriate hourly rate in this case. *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 89 F. Supp. 3d 1294, 1305 (M.D. Fla. 2014) (citing *Scelta v. Delicatessen Support Servs.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002)). Counsel's proposed rate of $600 per hour is unreasonable based on the lack of showing. Given the undersigned's familiarity with the local market and previous cases, the undersigned recommends $375 per hour as a reasonable rate under these circumstances. *See Vigil v. Primaso, Inc.*, No. 8:18-CV-1710-T-60CPT, 2020 WL 1976979, at *6 (M.D. Fla. Mar. 12, 2020), *report and recommendation adopted*, No. 8:18-CV-1710-T-60CPT, 2020 WL 1974232

16

(M.D. Fla. Apr. 24, 2020) (holding $375 per hour is on the high end of a reasonable hourly rate for an attorney with over 25 years of experience, when "the legal and factual issues presented were not complex or novel").

Plaintiff also seeks $485.04 in litigation costs for this matter, which are all recoverable under 42 U.S.C. §2000e-5(k) (Doc. 16, at 12). Lastly, Plaintiff is entitled to the mandatory post-judgment interest she requests. *See* 28 U.S.C. § 1961(a) ("Interest shall be awarded on any money judgment in a civil case recovered in a district court.") Therefore, Plaintiff is entitled to an award of $5,062.50 in attorneys' fees (13.5 hours multiplied by $375 per hour), $485.04 in costs, and post-judgment interest.

## IV.    Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1.    Plaintiff's Amended Motion (Doc. 16) be GRANTED as to Counts I, II, III, IV, and V on the issue of liability.

2.    Plaintiff be awarded economic damages in the amount of $19,160 in compensatory damages, $5,062.50 in attorneys' fees, $485.04 in costs, and post-judgment interest calculated at the statutory rate.

3.    Plaintiff be directed to file a notice to the Court that either: (1) states her intent to pursue noneconomic damages and/or other relief so the Court can set an evidentiary hearing or (2) withdraws her claims to noneconomic damages or other relief and accepts a final default judgment as to all counts.

     4.    If Plaintiff withdraws her pursuit of noneconomic damages, then a final default judgment as to Counts I, II, III, IV, and V be entered against Defendant in the amount of $24,707.54, plus post-judgment interest calculated at the statutory rate, or alternatively, if Plaintiff seeks noneconomic damages, then the matter be referred to the undersigned for further consideration.

     IT IS SO REPORTED in Tampa, Florida, on this 4th day of September 2025.

ANTHONY E. PORCELLI
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:    Hon. Charlene Edwards Honeywell
       Counsel of Record